IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOLENE HOWARD, AIMEE WALLACE, and ROBERT KELLENBECK, | CV 22–55–M–DWM |
| Plaintiffs, | OPINION and ORDER |
| vs. | |
| JESSE TODD and MONTANA D. TODD, | |
| Defendants. | |

Glacier National Park has long been recognized as the Crown Jewel of the Continent. The plaintiffs and the defendants are tenants in common with roughly one and one-half acres of land bordering Lake McDonald within the exterior boundaries of the Park. (Doc. 1 at 1–2.) The land was homesteaded in the late 19th century and has been passed from generation to generation. In 2018, the Howe Ridge Fire destroyed the fixtures and flora on the property and that gives rise to this dispute.

Each of the parties owns an undivided interest in the whole of the two parcels based on how the property passed within the estates of the various descendants of the original homesteaders. Each has a right of first refusal if one of the other tenants in common elects to sell his or her interest, and each of the

1

tenants in common has the right to use the entire estate in the two existing parcels. The plaintiffs, under Montana law, seek to divide the property to reflect the percentage of ownership each of the tenants in common possesses. *See* Mont. Code Ann. §§ 70–29–401, *et seq*. But they insist that "equitable" is defined by their views. The defendants stipulate to "an equitable division of the property," (Doc. 11 at 6), but hold a different view of what equity demands. A seemingly resolvable dispute has turned into a "federal case" asking the Court to stop further development and to equitably divide the land under Montana Law.

Having considered the parties' filings and the testimony and argument presented at the April 6, 2022 hearing, the plaintiffs' request for a preliminary injunction (Doc. 3) is granted as outlined below.

## BACKGROUND

### I. The Properties

The parties own the following two parcels of real property (the "Properties") as tenants in common within the boundaries of Glacier National Park:

> Tract 2 of Correction Certificate of Survey No. 20013 in Government Lot 2, Section 15, Township 33 North, Range 18 West, P.M.M, Flathead County, Montana ("Tract 2").
>
> Parcel B of Certificate of Survey No. 20647 in Government Lot 2, Section 15, Township 33 North, Range 18 West, P.M.M., Flathead County, Montana ("Parcel B").

(Doc. 1 at 1–2.) Tract 2 consists of approximately 0.783 acres and Parcel B

consists of approximately 0.74 acres. (*Id.* at 2; Doc. 1-1 at 5.) Tract 2 is colloquially referred to by the parties as the "double lot." The Properties were originally part of a larger 1892 homestead property known as "Kelly's Camp." It was operated as a commercial cabin business until the 1960s, when commercial use ceased and portions of the property were sold. The Properties are not contiguous because the land between Tract 2 and Parcel B was sold to the Park Service in the 1990s. While there were originally cabins on both properties, most—if not all—improvements were completely destroyed in the 2018 Howe Ridge Fire. (Doc. 1 at 2; *compare* Doc. 11 at 2 (indicating the septic on Tract 2 is intact) *with* Doc. 13-2 at 5 (indicating the old septic must be removed and replaced).)

## II. The Parties

Plaintiffs Jolene Howard and Aimee Wallace each own an undivided one-fifth (1/5) interest in the Properties, while Plaintiff Rob Kellenbeck owns an undivided two-fifth (2/5) interest (collectively "Plaintiffs"). (Doc. 1 at 2.) Defendants Jesse and Montana Todd each own an undivided one-tenth (1/10) interest in the Properties (collectively "Defendants"). (*Id.*) Montana is Jesse's son. (*Id.*) The Properties are subject to a Declaration of Reciprocal Rights of First Refusal (the "Right of First Refusal"), which grants each declarant and their lineal descendants the right to acquire an interest in the Properties in the event of a

proposal sale or transfer to anyone other than a lineal descendant. (*Id.* at 3.)

According to Plaintiffs, the Properties can no longer be jointly managed for the common benefit of all parties. (*Id.* at 4.) The current use of the Properties, specifically Tract 2, is central to the present action. Jesse began seasonally living on Tract 2 in May 2021. (Doc. 11 at 3.) Plaintiffs allege that Jesse left trash and debris on Tract 2; put gray water down the burned-out toiled pits on both Properties; and cleared trees from National Park Service Property. (Doc. 1 at 3.) They also allege that Montana began excavating, grading, and leveling Tract 2 without Plaintiffs' consent; evacuated a portion of National Park Service property; removed stumps from Tract 2 and deposited them on National Park Service property; and failed to get the proper Park Service permits for his equipment and activity. (*Id.* at 3–4.)

Defendants disagree with Plaintiffs' version of the facts, insisting that Tract 2 was properly maintained and all actions taken with the permission of the Park Service. (Doc. 11 at 4–5.) Defendants further insist that excavation activity only occurred because it was believed that Montana was going to purchase Rob's two-fifths interest. (*Id.* at 4.) Montana also provided Plaintiffs with a detailed description of his activities and his plans for Tract 2 in December 2021. (*See* Doc. 13-2.) According to that letter, Montana plans to live full time on Tract 2, replacing the septic, constructing a house and common toilet, and revegetating the

4

land with indigenous flora. (*See id.*) Finally, it appears that Defendants "inten[d] to rent cabins/tents" on Tract 2 "through Airbnb." (Doc. 11 at 12.) Accordingly, Defendants maintain that while the excavation activity is complete, further improvements are needed to meet the requirements of their tent camping rental business. (*See* Doc. 12 at 4–6.)

## III. The Proposed Partition

Plaintiffs propose to partition the Properties between the parties. A consulting report was prepared for Plaintiffs in February 2022, recommending the following partition:

| Owner | Aimee and Jolene | Rob | Jesse[1] and Montana |
|---|---|---|---|
| Property | Parcel B | Western 90 [frontage feet] of Tract 2 | Eastern 45 [frontage feet] of Tract 2 |
| Frontage Feet | 75 | 90 | 45 |
| Lot Size | .74 acres | .5 acres | .25 acres |
| Percent of Total | 36% | 43% | 21% |

(Doc. 1 at 6; Doc. 1-1 at 11, 21.) Under the proposed partition, Rob would also agree to divide water rights for Tract 2 with Defendants and grant them a ten-foot access and utility easement and drain field easement. (Doc. 1 at 6.)

"Defendants stipulate to an equitable division of the Property," (Doc. 11 at 6), but disagree with Plaintiffs' proposal on the grounds that their proposed parcel

---

[1] Plaintiffs indicate that there is a judgment lien against Jesse in the amount of $934.24 plus interest as of October 17, 2016. (Doc. 1 at 5.) If the Properties are partitioned under Montana law, that lien will attach to only Defendants' property. *See* § 70–29–215.

5

"will become incapable of development while the other lot remains fully viable," (*id.* at 7). As a result, Defendants propose their own partition, which would split Rob's interest across Parcel B and Tract 2, giving Defendants 40% of Tract 2. (*See* Doc. 11 at 9–10.) Defendants also seek either permission to place the septic on Tract 2 where it is currently approved by the County or, if moved, have Rob pay 60% of the installation cost. (*Id.* at 10.) Finally, Defendants indicate that they are still interested in purchasing Rob's interest and seek to have the Right of First Refusal attach to any partitioned property. (*See id.* at 6.)

## IV. Procedural History

Plaintiffs filed their Verified Complaint on March 15, 2022, (Doc. 1), and their motion for preliminary injunction the next day, (Doc. 3). Both filings were served on Defendants by March 23, 2022, (*see* Docs. 4–7, 9–10). A hearing on the motion for a preliminary injunction was held on April 6, 2022. Plaintiffs were represented at the hearing by counsel Grant Snell. Plaintiffs called one witness, Rob Kellenbeck. Two exhibits were offered and admitted by Plaintiffs, Exhibit A, (Doc. 13-1), is a map of the parcels depicting the proposed partition and Exhibit B, (Doc. 13-2), is December 2021 correspondence between the parties related to the Properties. Defendants appeared at the hearing pro se, but indicated that they plan to seek counsel. Defendants called one witness at the hearing, Jesse Todd himself. Defendants also filed a pro se answer to the Verified Complaint, (Doc. 11), and

response to the pending motion, (Doc. 12), directly prior to the hearing.

## ANALYSIS

Plaintiffs request preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, seeking to "preclud[e] Defendants, their agents, guests, and their invitees, from damaging, excavating, leveling, clearing, or otherwise constructing or making any form of improvements on the Properties . . . during the pendency of the immediate action." (Doc. 3.) To succeed on their request, Plaintiffs must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because all four requirements are met, Plaintiffs' motion is granted.

### I. Likelihood of Success

Plaintiffs' request to partition the Properties is generally subject to Montana Code Annotated Title 70, Chapter 29, Parts 1 through 3, but more specifically governed by Part 4, which is known as the Uniform Partition of Heirs Property Act. *See* § 70–29–403(3).[2] In a "partition in kind" action under this Act, "heirs

---

[2] Although the case law makes clear that this Court has jurisdiction over federal inholdings in Glacier Park, *see Macomber v. Bose*, 401 F.2d 545 (9th Cir. 1968) (interpreting 16 U.S.C. §§ 161 *et seq.*), the law governing partition is less clear. Pursuant to *Macomber*, "[s]tate law . . . applicable within the area was assimilated as federal law, to remain in effect until changed by Congress." *Id.* at 546 (citation

7

property" is divided "into physically distinct and separately titled parcels." § 70–29–402(7). "Heirs property" is defined as "real property held in tenancy in common" for which "there is no agreement in record binding all the cotenants that governs the partition of property," "one or more of the cotenants acquired title for a relative, whether living or deceased," and 20% or more of the interests are held by relatives or acquired title from a relative. § 70–29–402(5). "Relative" "means an ascendant, descendant, or collateral or an individual otherwise related to another individual by blood, marriage, adoption, or law." § 70–29–402(9). The question of whether the real property at issue is "heirs property" is one for the Court, and "[i]f the Court determines that the property is heirs property, the property must be partitioned under this part unless all of the cotenants otherwise agree in a record." § 70–29–403(2).

The Court is required to "order partition in kind unless the court, after consideration of the facts listed in 70–29–413, finds that partition in kind will result in great prejudice to the cotenants as a group." § 70–29–412. Section 70–29–413 identifies the following considerations in assessing prejudice:

> (a) whether the heirs property practicably can be divided among the cotenants;
>
> (b) whether partition in kind would apportion the property in such a way that the aggregate fair market value of the parcels resulting from

---

omitted). In the absence of any such change, Montana property law applies here.

8

the division would be materially less than the value of the property if it were sold as a whole, taking into account the condition under which a court-ordered sale likely would occur;

(c) evidence of the collective duration of ownership or possession of the property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other;

(d) a cotenant's sentimental attachment to the property, including any attachment arising because the property has ancestral or other unique or special value to the cotenant;

(e) the lawful use being made of the property by a cotenant and the degree to which the cotenant would be harmed if the cotenant could not continue the same use of the property;

(f) the degree to which the cotenants have contributed their pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the property or have contributed to the physical improvement, maintenance, or upkeep of the property; and

(g) any other relevant factor.

"The Court may not consider any one factor [above] to be dispositive without weighing the totality of all relevant factors and circumstances." § 70–29–413(2).

Here, the Properties meet the definition of "heirs property" under Montana law. *See* § 70–29–402(5). As a result, partition is appropriate unless it would result in "great prejudice to the cotenants as a group." § 70–29–412. At this point, the record indicates no such prejudice because while the parties may disagree as to the ultimate partition, all parties recognize that partition of some kind is appropriate. (*See* Doc. 11 at 6 ("Defendants stipulate to an equitable division of

9

the Property.").) Partition is also supported by the history and circumstances of the Properties. While the Properties have been in the family for over a century, the original homestead lot has been previously partitioned. Moreover, the parties currently disagree with each other's use of the Properties, particularly Tract 2, as outlined in some detail in Montana's December 2021 correspondence. (*See* Doc. 13-2.) The parties also appear to share in the maintenance and use, as Rob testified that he was involved in cleanup after the 2018 Fire and Montana has indicated that he performed the most recent cleanup and he pays the liability insurance. (*See id.*) Ultimately, Plaintiffs are likely to succeed on the merits insofar as a partition is appropriate; the terms of that partition remain unclear, however.

## II.    Irreparable Harm

Plaintiffs insist they will suffer irreparable harm in the absence of injunctive relief because any improvements or changes to the Properties pre-partition may complicate or prevent the permanent relief sought. But, according to Defendants, "[t]he land has already been graded, excavated and leveled: no permanent construction is planned until the property is divided by the Defendants." (Doc. 12 at 4.) Assuming Defendants meant "the parties" or "Plaintiffs" instead of "Defendants," it would then seem that there is no imminent harm. However, Defendants go on to state:

> There will be tents erected as camping spots, port-a-toilets installed by
> a company that will also service them and the RV's that the Defendants

10

> live in, along with restoring the indigenous plants and grasses that were destroyed by the fire. All of which will be done at no cost to the Plaintiffs and under the direction of the National Park Service.

(Doc. 12 at 4–5.) Thus, it is clear that Defendants intend to perform further improvements on Tract 2. To the extent those improvements take the form of permanent structures or fixtures, they would impede future efforts to partition the Properties. Plaintiffs have therefore shown irreparable harm, at least insofar as it relates to real property improvements that will affect future partition.

### III. Balance of Equities

To determine the balance of the equities, courts must identify and weigh "the possible harm caused by the preliminary injunction against the possibility of harm caused by not issuing it." *U. of Hawaii Prof. Ass'n v. Cayetano*, 183 F.3d 1086, 1108 (9th Cir. 1999). Generally, the more likely it is that the moving party will succeed on the merits, the less the balance of the equities must tip in the party's favor to justify preliminary relief. *See L.A. Mem. Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203–04 (9th Cir. 1980). Here, the harm in not granting the relief outweighs its counterpart.

Defendants have identified three interrelated harms associated with an injunction. First, Defendants plan to reside in RVs on Tract 2. Second, Defendants insist they will need to perform "maintenance" as part of that residence. Finally, Defendants indicate they intend to run a tent camping business

11

on the newly excavated Tract 2 "through Airbnb." (Doc. 11 at 12.) Accordingly, Defendants argue that if they "are unable to continue to improve the property in order to fulfill the PRIOR contractual obligation as a tent camping rental through Airbnb, there will be significant loss of revenue." (Doc. 12 at 5–6.) But these interests are either not limited by the proposed injunction or can be alleviated through expedient litigation. An injunction on further building activities does not prevent either Jesse or Montana from residing on the Properties in their RVs. Nor does it prevent the commercial use of the Properties as a tent camp. Rather, the preliminary injunction imposed here limits permanent alterations to the Properties, such as the construction or replacement of structures, septic systems, wells or roads. Defendants' lawful use is not otherwise limited by this Order.

### IV. Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (cleaned up). Accordingly, this factor is neutral here.

### V. Bond

Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to

pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation marks omitted). "In particular, the district court may dispense with the filing of a bond when it concludes that there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). But Defendants seek a bond in order to cover the cost of prior contractual obligations related to their commercial tent camping operation. (*See* Doc. 12 at 6.) Defendants have not, however, presented any evidence as to the value of those preexisting contracts or how an injunction on permanent structures and fixtures would impede their plans. Defendants themselves have indicated that "no permanent construction is planned until the property is divided." (*Id.* at 4.) Accordingly, a bond is not required.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' motion for a preliminary injunction (Doc. 3) is GRANTED. Defendants, their agents, guests, and their invitees, are precluded from constructing or replacing any permanent structures, septic systems, wells, and/or roads on the Properties during the pendency of this action. Defendants may, however, engage in vegetation and/or soil management and maintenance activities consistent with the direction of the

National Park Service.

DATED this 7th day of April, 2022.

_____ 10:15 A.M.
Donald W. Molloy, District Judge
United States District Court